■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RALPH JAMISON, Appellant.—Judgment, Supreme Court, New York County, ren-

dered November 23, 1977, convicting defendant, upon a plea of guilty, of criminal sale of a controlled substance in the second degree and sentencing him thereupon to eight and one-third years to life imprisonment, reversed, on the law, the station house statements suppressed, the plea vacated, and the matter remanded for further proceedings. Twenty five months after the filing of two indictments, each charging defendant with criminal sale of a controlled substance in the first degree for two separate sales of heroin to an undercover police officer, defendant was arrested pursuant to warrants issued on the indictments. Taken to the station house, he was given his *Miranda* warnings. After each warning was intoned defendant was asked whether he understood, and in each instance he answered affirmatively. Defendant was then asked "Now that I have advised you of the rights, are you willing to answer the questions without an attorney present?" Before a further question was posed, defendant launched into a monologue, stating, according to the testimony of the interrogating officer: "he was glad that this was over, he hasn't had a good night's sleep since he started running * * * when he first discovered that he was wanted by the police, he hid out in the Bronx for approximately six months * * * it was right after another defendant by the name of Hamilton Gould was served with an indictment, was arrested * * * after the six-month period in which he stayed off the street in the Bronx, he then fled to the State of New Jersey, where he hid out for a period of time also * * * he should have never gotten involved with three other, a couple of other defendants in the case, by the name of— by the names of, well, Charles Marris, Gary Bentley (phonetic), and Porky (phonetic), known to us to be Richard Manuel (phonetic)." After a hearing, Trial Term, finding that defendant had waived his privilege against self incrimination, denied the motion to suppress. On appeal defendant argues that these statements are inadmissible because they were made as a result of questioning in violation of his right to have counsel present. Although not raised at the *Huntley* hearing, the issue, involving a fundamental constitutional right, is preserved for appeal. *(People v Ermo,* 47 NY2d 863; *People v Arthur,* 22 NY2d 325, 329.) It appears clear to us that in New York all postindictment, custodial interrogation in the absence of counsel is barred, irrespective of whether counsel has actually entered the case at the time of the interrogation. *(People v Settles,* 46 NY2d 154, 159, 162-163; *People v Waterman,* 9 NY2d 561, 564-566.) As the court stated in *Settles* (p 159): "The filing of an indictment constitutes the commencement of a formal judicial action against the defendant and is equated with the entry of an attorney into the proceeding." That an accused, once indicted, has an absolute right to counsel, and that postindictment questioning in counsel's absence is violative of his right to representation is virtually conceded by the People, whose sole appellate argument is that defendant's station house statements are admissible as spontaneous declarations. We reject this argument. Although defendant's statements were not in response to any specific question relating to the charges, they were obviously triggered when he was asked whether he was willing to answer questions without an attorney present. That defendant did not wait for a particular question does not render the statement any less the product of interrogation. He obviously viewed the question as calling for a response and proceeded accordingly. It is noteworthy that the same statement was not later repeated nor made earlier in any other context. Earlier statements by defendant were suppressed because they had not been preceded by the *Miranda* warnings. The ultimate result of our ruling here—remand—is unfortunate. The statements which, for the most part, insofar as we can discern, have no bearing on the

drug sales charged, were intended, according to the prosecutor, for use at trial as reflective of a consciousness of guilt. But, proof of flight, as circumstantial evidence of guilt, is of slight value. *(People v Yazum,* 13 NY2d 302.) Surely, evidence of flight after the filing of an indictment is all the more equivocal on the issue of guilt and of less probative value. While we are not at all convinced that the denial of the motion to suppress the station house statements prompted defendant's plea, "an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision [to plead guilty], unless at the time of the plea [the defendant] states or reveals his reason for pleading guilty." *(People v Grant,* 45 NY2d 366, 379-380.) Needless to say, at the plea proceeding which took place the day after the suppression motion was decided, defendant did not express his reasons for pleading guilty. Concur—Sullivan, J. P., Markewich and Ross, JJ.

Bloom and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows: I would affirm the judgment appealed from. As the majority states, at the end of the *Miranda* warnings, the police officer asked: "Now that I have advised you of the rights, are you willing to answer the questions without an attorney present?" I do not agree that this question constituted interrogation which made the defendant's ensuing monologue other than "voluntary and spontaneous". This question did not ask any facts as to the crime. It was merely an integral part of the *Miranda* procedures which require both warnings and waiver. ("The warnings required and the waiver necessary in accordance with our opinion today". *[Miranda v Arizona,* 384 US 436, 476].) The question is merely an effort to comply with the Supreme Court's statement as to how a waiver may be established. "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." *(Miranda v Arizona, supra,* p 475.) If this question constitutes interrogation, then the *Miranda* procedure of which it is an integral part constitutes interrogation; and indeed it suggests that it is improper even to administer *Miranda* procedures on a postindictment arrest. This court has recently held that a voluntary, spontaneous postindictment statement made in the absence of counsel is admissible. *(People v Roucchio,* 70 AD2d 322.)